UNITED STATES of America,
Plaintiff–Appellant,

v.

Darryl Lee DAVIS, Defendant–Appellee.

No. 92–5519.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1993.

Decided May 6, 1993.

Daniel A. Clancy, U.S. Atty., Office of the U.S. Atty., Memphis, TN, R. Leigh Grinalds, Asst. U.S. Atty. (argued and briefed), Jackson, TN, for U.S.

Clayton F. Mayo (argued and briefed), Ford, Mosier & Mayo, Jackson, TN, for Davis.

Before: BOGGS and SILER, Circuit Judges; and JOINER, Senior District Judge.[*]

JOINER, Senior District Judge.

Defendant Darryl Lee Davis was found guilty following jury trial on all counts of a three-count indictment charging possession of a firearm after having previously been convicted of a felony, 18 U.S.C. § 922(g) (count 1); retaliation against a government witness, 18 U.S.C. § 1513(a)(1) (count 2); and use of a firearm during a crime of violence, 18 U.S.C. § 924(c) (count 3). The offense charged in count 2 was the predicate for the offense charged in count 3. More than two months after the jury was discharged, the district court sua sponte entered a judgment of acquittal on counts 2 and 3. The government appeals, contending that the court lacked the power to enter the judg-ment of acquittal, and that even if the court had the power, it was erroneously exercised in this case.

For the reasons that follow, we conclude that the district court lacked the power under Fed.R.Crim.P. 29 to enter a judgment of acquittal on its own motion more than seven days after the jury had been discharged. We therefore reverse the judgment of acquittal on counts 2 and 3, direct that the jury verdict of guilty on these counts be reinstated, and direct that judgment be entered on that verdict.

## I.

Darryl Davis's convictions stemmed from an attack on his estranged wife, Mona Davis. The Davises' relationship dated back to 1985. They had a daughter in August 1987, and married in 1989. Mona Davis filed for divorce in November 1990, but a judgment of divorce had not been entered as of the date of the offense in this case. In the fall of 1988, Darryl Davis's brother Kenneth Davis was prosecuted for a crime in district court, and Mona Davis testified against him.

On September 18, 1991, Darryl Davis armed himself with a shotgun, broke into Mona Davis's home and physically and sexually assaulted her. The Davises' four-year old daughter was present throughout the attack, and observed all that occurred. Darryl Davis forced Mona Davis to perform sexual acts on both him and Mona Davis's boyfriend. Mona Davis ultimately escaped from the house and phoned the police.

After being apprehended, Darryl Davis gave a lengthy statement to the police, admitting the assault and stating, "[Mona] was the main witness on my brother being in the pen right now." Darryl Davis testified at trial that the arresting officer knew about Kenneth Davis's conviction and had asked Darryl Davis in the car on the way to the station how Kenneth was doing. "And that's why it entered my mind. Plus, I mean, you know, it's—it's a small part of what's hap-

[*] The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

pened."[1]

Davis moved for a judgment of acquittal at the close of the government's case and again at the close of the evidence. The district court denied both motions without reserving its ruling until after the jury returned its verdict. At the time of sentencing, the court stated that when it denied the motion, it "assumed that the defendant would renew his motion for judgment of acquittal after the trial was over; and, to my surprise, there was no motion filed." Defense counsel explained his failure to renew the motion, stating that his decision was premised in part on the pendency of state charges based on the assault. "And what Mr. Davis wants, and has informed me on numerous occasions, is that he wants to do his time in a federal pen, if at all possible." Nonetheless, defense counsel argued that a judgment of acquittal should be entered on counts 2 and 3, and that the court had the authority to enter such a judgment. Sentencing was adjourned to allow the court to consider a judgment of acquittal.

On March 19, 1992, the district court entered a judgment of acquittal on counts 2 and 3. The court first explained that it had intended to reserve its ruling on Davis's motion for judgment of acquittal. The court concluded that it had the inherent authority to consider a judgment of acquittal after the discharge of the jury in the absence of a motion by the defendant if necessary to correct manifest injustice. The court stated that it had no question about the validity of Davis's conviction on count 1 because of the overwhelming evidence that Davis possessed a firearm after he had been convicted of a felony. Counts 2 and 3, however, posed a more difficult issue.

The court concluded that while Davis's acts were serious crimes, they were state crimes, not federal offenses. The court emphasized that it was very interested in protecting witnesses who had given testimony before it. "[A]nd if I thought for a moment that Mr. Davis had retaliated against Ms. Davis because she had testified in this court, I would have no reluctance in punishing him accordingly." However, even viewing the evidence in a light most favorable to the government, the court concluded that Davis's attack was not motivated by Mona Davis's testimony against Kenneth Davis:

There are two reasons why I think he did not do it in retaliation for her testimony. One reason is that after the testimony at the trial of Mr. Davis' brother, Mr. and Ms. Davis got married. They lived together, for a long time. And it seems strange to me that if he is going to retaliate against her for testifying against his brother that he wouldn't have married her. The second thing is that these horrendous acts were also committed upon [Mona Davis's boyfriend], and [the boyfriend] had never testified against Mr. Davis' brother. And it seems to me that if this was a retaliation that he would have had no ax to grind with [the boyfriend], and the fact that he and [the boyfriend] got into it is an indication to me that this clearly was a domestic disturbance and it was not a retaliation for a federal crime.

## II.

Motions for judgment of acquittal are governed by Federal Rule of Criminal Procedure 29.[2] By its express terms, Rule 29

---

1. At oral argument, Davis's attorney stated that the arresting officer denied at trial that he had inquired about Kenneth Davis.

2. Rule 29 provides in pertinent part:
   (a) **Motion Before Submission to Jury**.... The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses....
   (b) **Reservation of Decision on Motion.** If a motion for judgment of acquittal is made at the

close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.
   (c) **Motion After Discharge of Jury.** If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period....

contemplates that the trial court may enter a judgment of acquittal on its own motion only prior to the submission of the case to the jury. Fed.R.Crim.P. 29(a). The court may reserve its ruling on a motion made at the close of the evidence, and decide the motion after the jury returns a verdict or is discharged without having returned a verdict. Fed.R.Crim.P. 29(b). Subdivision (c) provides that a defendant may make a motion for judgment of acquittal after the jury returns a guilty verdict or is discharged without having returned a verdict, but requires that such a motion be filed within seven days after the jury is discharged, or within such further time as the court may fix within that seven-day period. Federal Rule of Criminal Procedure 45(b) states that the "court may not extend the time for taking any action under Rules 29, 33, 34 and 35, except to the extent and under the conditions stated in them."

In this case, Davis made motions under Rule 29(a) for judgment of acquittal prior to the submission of the case to the jury. The court did not reserve its ruling on the motion made at the close of the evidence as permitted by Rule 29(b). Davis did not make a post-verdict motion for judgment of acquittal at any time. Rather, the court, on its own motion, entered a judgment of acquittal more than two months after the jury was discharged. The question presented by this case is whether the court had the authority to so act. We conclude that it did not.

In reaching this conclusion, we rely on *United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947); and *United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960); cases which required the Supreme Court to resolve whether district courts had the power to grant certain relief beyond that provided for in the Federal Rules of Criminal Procedure. In both cases, the Court strictly applied the provisions of the applicable rules and concluded that the district court did not have the inherent authority to act as it had.

The issue in *Smith* was whether the district court had the inherent power to order a new trial after the defendant's conviction had been affirmed and the mandate had been issued by the court of appeals. The defendant had filed a timely motion for new trial prior to appeal, and the district court had denied that motion prior to appeal. However, after the appeal, the district court reconsidered its earlier denial of the motion, vacated the judgment, and ordered that a new trial be held. The Supreme Court held that the government was entitled to a writ of mandamus vacating that order.

The Court reviewed the provisions of Fed. R.Crim.P. 33 governing the grant of a new trial, noting that the rule's terms did not permit the court to order a new trial on its own motion. The only time limitation in the rule related to the time within which a defendant could make a motion for a new trial.

It is now said that because the literal language of the Rule places the five-day limit only on the making of the motion, it does not limit the power of the court later to grant the motion, and the power survives affirmance of the judgment by appellate courts. [It is further argued] that the rule prevents a defendant from asking the court to grant a new trial after the times specified, but that it permits the judge to order retrial without request and at any time.

*Smith*, 331 U.S. at 473, 67 S.Ct. at 1332. The Court identified several reasons why this construction of the rule, which would indefinitely extend the power of the court to grant a new trial, was unacceptable.

First, permitting the trial court to grant a new trial after appeal would raise questions of finality and authorize the appellate process to be exercised in an advisory capacity. Second, such a construction would deprive the court of the power to act when an untimely request for new trial was made by a defendant, but permit the court to act without a request by the "person most concerned," the defendant himself. "If a condition of the power is that request for its exercise be not made, serious constitutional issues would be raised. For it is such request which obviates any later objection the defendant might make on the ground of double jeopardy." *Id.* at 474, 67 S.Ct. at 1333. Finally, the Court stated that it was reluctant to hold that the trial court has a continuing power to act on

its own initiative to grant what the defendant has no right to ask, because such a result would almost certainly subject trial judges to continuing private appeals for relief.

> We think that expiration of the time within which relief can openly be asked of the judge, terminates the time within which it can properly be granted on the court's own initiative. If the judge needs time for reflection as to the propriety of a new trial, he is at liberty to take it before denying a timely made motion therefor.

*Id.* at 475, 67 S.Ct. at 1333.

The Court recognized that the support for a contrary interpretation of Rule 33 arose from fear of miscarriage of justice. The Court stated, however, that indefinitely extending the time for the trial court to act provides no insurance of justice. "On the contrary, as time passes, the peculiar ability which the trial judge has to pass on the fairness of the trial is dissipated as the incidents and nuances of the trial leave his mind to give way to immediate business." *Id.* at 476, 67 S.Ct. at 1334. The Court identified post-conviction procedures available to provide remedies for errors occurring at trial and for reasons not known to the court at the time of judgment. *Id.* at 475, 67 S.Ct. at 1333.

In *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960), the issue was whether jurisdiction was conferred on the court of appeals by virtue of an untimely notice of appeal, found by the district court to have been filed late as a result of excusable neglect. The court of appeals held that it had jurisdiction, despite the plain language of Fed.R.Crim.P. 45(b) then in effect, stating that "the court may not enlarge the period for taking any action under Rules 33, 34 and 35, except as otherwise provided in those rules, or the period for taking an appeal." *Id.* at 223, 80 S.Ct. at 285. The Supreme Court reversed, rejecting the argument that permitting a late notice of appeal due to excusable neglect was not tantamount to "enlarging" the period for taking an appeal. The Court noted that if such an untimely notice of appeal were held sufficient to confer jurisdiction of the appeal, it would consistently follow that a finding of excusable neglect would permit delayed action under Rules 33, 34 and 35. The Court stated that such a result would not only be contrary to the plain language of the rules themselves, but to its decision in *Smith. Id.* at 225–26, 80 S.Ct. at 286.

> That powerful policy arguments may be made both for and against greater flexibility with respect to the time for the taking of an appeal is indeed evident. *But that policy question, involving, as it does, many weighty and conflicting considerations, must be resolved through the rule-making process and not by judicial decision....* If, by that process, the courts are ever given power to extend the time for the filing of a notice of appeal upon a finding of excusable neglect, it seems reasonable to think that some definite limitation upon the time within which they might do so would be prescribed; for otherwise, as under the decision of the court below, many appeals might—almost surely would—be indefinitely delayed. Certainly that possibility would unnecessarily produce intolerable uncertainty and confusion. Whatever may be the proper resolution of the policy question involved, it was beyond the power of the Court of Appeals to resolve it.

*Id.* at 229–30, 80 S.Ct. at 288–89 (citation and footnote omitted; emphasis added).[3]

The Supreme Court's decisions in *Smith* and *Robinson* leave little doubt concerning the proper resolution of the question before us. The provisions of Rule 29 do not differ from those of Rule 33 in any respect sufficient to justify different treatment of these rules. While Rule 29 authorizes sua sponte action by the court before the case is submitted to the jury, there is no provision authorizing the court to act on its own initiative after the case is submitted to the jury. In this respect, it is identical to Rule 33. Like Rule 33, Rule 29 requires that motions be made within a specific seven-day period, or within such further time as the court may fix within that period. Rule 45(b) prohibits the

---

**3.** The policy question identified by the Court was resolved by amendments to Fed.R.Crim.P. 45 and 37. The provisions of Rule 37 were later incorporated into Fed.R.App. 4(b).

court from extending the time for taking any action under Rule 29 and Rule 33 in a manner inconsistent with those rules.

As in *Smith,* it is argued here that because the literal language of the rule limits the time for making a post-verdict motion, the rule does not limit the power of the district court to act on its own motion. Acceptance of this position would indefinitely extend the power of the district courts to act, a result soundly rejected by the Court in *Smith* and *Robinson.* While the double jeopardy concerns present in *Smith* do not exist in this case, the other reasons advanced by the Court for its strict construction of Rules 33 and 45 apply equally here: the Court's reluctance to construe Rule 33 in a way that would deprive the district court of the power to act on a motion made by "the person most concerned," yet permit action by the court on its own initiative; the need to avoid subjecting judges to continuing private appeals regarding convictions; the availability of post-conviction relief to address the risk of miscarriage of justice; and the need to avoid the uncertainty and confusion that would necessarily result from delayed decisions.

The decisions of our sister circuits do not provide uniform guidance and are not helpful in deciding this question.[4] Those cases suggesting that a district court has the inherent power sua sponte to enter an untimely judgment of acquittal are unpersuasive, and their results are untenable in light of the express terms of Rule 29 and the Supreme Court's decisions in *Smith* and *Robinson.* A different result must be achieved through the rule-making process, and not by judicial decision. *Robinson,* 361 U.S. at 225–26, 80 S.Ct. at 286.

We conclude that the district court lacked the power sua sponte to enter a judgment of acquittal more than seven days after the jury was discharged. Our resolution of this issue makes it unnecessary for us to consider the government's remaining claim of error.

For the reasons stated, we **REVERSE** the judgment of acquittal on counts 2 and 3 and **REMAND** this case with directions that the jury's verdict of guilty on these counts be **REINSTATED,** and direct that judgment be entered on that verdict.

---

**4.** *Compare United States v. Hocking,* 841 F.2d 735 (7th Cir.1988); *United States v. Johnson,* 487 F.2d 1318, 1321 (5th Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); *Rowlette v. United States,* 392 F.2d 437, 439 (10th Cir. 1968); *with United States v. DiBernardo,* 880 F.2d 1216, 1225 n. 4 (11th Cir.1989); *United States v. Coleman,* 811 F.2d 804, 807 (3d Cir. 1987); *United States v. Giampa,* 758 F.2d 928, 936 n. 1 (3d Cir.1985); *Arizona v. Manypenny,* 672 F.2d 761, 764–66 (9th Cir.), *cert. denied,* 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982); *United States v. Hughes,* 759 F.Supp. 530, 532–36 (W.D.Ark.), *aff'd,* 952 F.2d 190 (8th Cir.1991); and *United States v. Broadus,* 664 F.Supp. 592, 595–98 (D.D.C.1987).