**Edwin PEAVY, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 93–3667.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1994.

Decided Aug. 3, 1994.

---

Robert A. Ruggeri (argued and briefed), Cleveland, OH, for petitioner-appellant.

Ronald B. Bakeman, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Cleveland, OH, for respondent-appellee.

Before: KEITH and BATCHELDER, Circuit Judges; and JOINER,* Senior District Judge.

JOINER, Senior District Judge, delivered the opinion of the court, in which KEITH, Circuit Judge, joined.

BATCHELDER, Circuit Judge (pp. 1347–50), delivered a separate dissenting opinion.

JOINER, Senior District Judge.

Edwin Peavy appeals the summary dismissal of his motion to vacate sentence under 28 U.S.C. § 2255. We conclude that the factual record developed in the district court provided insufficient basis for the summary dismissal of Peavy's motion. We therefore reverse and remand for an evidentiary hearing, subject to the limitations we delineate herein.

## I.

### A. Guilty Plea and Sentence

In 1989, Peavy was charged in a two-count indictment with cocaine distribution offenses under 21 U.S.C. § 841(a)(1). Peavy pled

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

guilty to one of the two counts pursuant to a plea agreement which set forth the applicable guidelines offense level and the parties' agreement that "the role in offense adjustment, the obstruction adjustment, and the special career offender/criminal livelihood provisions are not applicable." The written plea agreement makes no mention of any promise on Peavy's part to cooperate in ongoing investigations. The agreement further states:

> This is *the entire Plea Agreement* between the defendant and the United States of America and has been entered into by the defendant knowingly, freely, voluntarily, and without threats from anyone, after due consultation with his undersigned attorney. *No alteration of any term of this Agreement may be made except as set forth in writing and agreed to by the parties.*

(Emphasis added.)

At the plea hearing, Peavy was asked whether anyone promised him or threatened him to enter a guilty plea, and Peavy answered yes. The court then inquired whether there was a Rule 11 understanding, and Peavy again answered yes. At the court's request, the assistant United States attorney recited the applicable sentencing terms, consistent with those set forth in the written plea agreement. The court then asked Peavy, "You understand that to be the Rule 11 agreement?" and Peavy answered yes. The court did not inquire whether there were any other promises or inducements.

At no time during the plea hearing did Peavy's attorney or the assistant United States attorney disclose to the court that Peavy had agreed to cooperate with the government in exchange for sentencing concessions, and that court was to be informed of this cooperation at sentencing. Nonetheless, at sentencing, the court alluded to an in-chambers conference during which Peavy's cooperation with the government was dis-

closed. The court then sentenced Peavy to a term of 92 months, the lowest sentence in the applicable range, first noting that a higher sentence could have been applicable.

## B. Post–Conviction Motions

Two years later, Peavy filed a motion to withdraw his plea under Fed.R.Crim.P. 32(d), alleging that prior to entering into the written plea agreement, he had been told by two FBI agents that if he cooperated in ongoing investigations, the United States attorney's office would file a Rule 35[1] motion within a year of sentencing, seeking the reduction of his sentence, and that ultimately he would serve only two years of whatever sentence was imposed. Peavy further stated that the written plea agreement did not contain all of the agreed-upon terms because of a concern that Peavy's safety and that of his wife and children would be jeopardized if his cooperation became known. Peavy claimed that he cooperated as requested during this period, and that the government had breached the agreement. Peavy's motion was supported by the affidavit of Peavy's attorney, who had represented him at the plea and sentencing, and who claimed to have been present when the agents made the promise.

The government responded to Peavy's Rule 32(d) motion, properly requesting that it be considered a § 2255 motion,[2] and stating that the FBI agents denied that they made promises as alleged by Peavy and his counsel. The government's response was neither verified nor supported by affidavits. In opposing Peavy's motion, the government placed no reliance on the written plea agreement and the clause quoted above, and, in fact, stated that there was no written agreement between the parties. Instead, the government contended that an *oral* plea agreement required Peavy's cooperation, and that the government had agreed to inform the court at sentencing of Peavy's cooperation and to not seek any sentencing enhance-

---

1. In 1990, Fed.R.Crim.P. 35 provided that the "court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense[.]"

2. Rule 32(d) provides that after sentencing a "plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255."

ments. The government claimed to have fully honored these obligations.

To support its assertion that the FBI agents did not make the disputed promises, the government explained a series of events that post-dated Peavy's sentence. The government disclosed that Peavy's cooperation had resulted in the indictments of four persons, three of whom had been tried and convicted by the time Peavy pled guilty. The fourth individual was apprehended later and tried in Detroit. Peavy's cooperation was sought, but he did not testify at the trial. The Ohio assistant United States attorney told Peavy at the time that if the Michigan assistant United States attorney recommended a Rule 35 motion, that the Ohio office would "consider" such a request. The Michigan office made no recommendation, and the Ohio office made no motion. The government contended that the fact that Peavy's counsel did not raise the alleged promises by the FBI agents while these matters were being discussed indicated that no promises were made.

Seven months later, when the court had not responded to the first motion, Peavy filed a motion to vacate, set aside or correct an order of sentence under 28 U.S.C. § 2255. This motion incorporated the earlier Rule 32 motion, and explained Peavy's initial reluctance to testify at the Detroit trial of the fourth suspect. Peavy asserted that his wife had been warned that his service as an informant was known, and that he was justifiably concerned for his family's safety. Peavy nonetheless agreed to testify, and was moved to the Detroit area several times, accompanied by counsel on at least one occasion. According to Peavy, the government concluded that his testimony was not needed.

The government responded to Peavy's § 2255 motion by incorporating its response to the Rule 32 motion. Like its predecessor, this response was neither verified nor supported by affidavits. The court then entered a marginal entry order denying Peavy's motion. Peavy moved to reconsider, stating that he was entitled to a hearing under § 2255, and arguing that the court disregarded the only evidence on the motion, the affidavit of his attorney.

The court denied the motion for reconsideration in an opinion, erroneously stating that Peavy's written plea agreement contained an agreement to cooperate in exchange for the government's promise to not seek sentencing enhancements. Placing exclusive reliance on the government's unverified response, the court then detailed the cooperation rendered and the sentence imposed, as well as the government's explanation of the Detroit trial and Peavy's failure to testify at that trial. The court further stated that the FBI agents denied making the promises alleged by Peavy, although the record contained no affidavits setting forth this denial. The court stated that Peavy had presented no evidence to indicate that the government did not adhere to the plea agreement, and no evidence that the agents were authorized to make a deal with Peavy.

## II.

Peavy requests alternative relief. First, he asks us to find that the government breached a promise which induced the guilty plea and to either enforce the promise or allow him to withdraw his plea. In the alternative, Peavy asks us to remand the case to the district court for a hearing, so that the factual issues can be resolved. Just as the record provided insufficient basis for the district court to find that Peavy's plea was not induced by the FBI agents' alleged promises, it is insufficient for this court to find the opposite. Thus, the principal issue is whether Peavy was entitled to a hearing. We also address Peavy's claim that he is entitled to specific performance of the agents' alleged promise.

### A. Hearing

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise

must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

 The proper procedure by which to challenge a federal plea-based conviction is pursuant to 28 U.S.C. § 2255, which provides in pertinent part:

> Unless the motion and the files and records of the case *conclusively show that the prisoner is entitled to no relief,* the court shall cause notice thereof to be served upon the United States attorney, *grant a prompt hearing thereon,* determine the issues and make findings of fact and conclusions of law with respect thereto.

(Emphasis added.) The critical question is whether the petitioner's allegations, when viewed against the record of the plea hearing, are so "palpably incredible" or so "patently frivolous" as to warrant summary dismissal without a hearing. *Blackledge v. Allison,* 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977).

*Blackledge* assessed the need for a hearing against the record of the guilty plea which consisted of a printed form from which the trial judge asked questions and checked Blackledge's "yes" or "no" answers. The Court noted that it was impossible to determine whether the trial court or counsel deviated from the form, and that the form did not reflect that either lawyer was asked to report any agreement that had been reached or sentencing recommendation that had been promised. In light of this record, the Court held that Blackledge's claim that he was promised a specific sentence was not so frivolous as to warrant summary dismissal.

Unlike the situation in *Blackledge,* there was a written plea agreement in this case containing an integration clause, which, we emphasize, would ordinarily prevent any assertion that there were side deals or promises. However, the government places no reliance on the written plea agreement, and relies instead on an oral plea agreement. This oral agreement contained the same sentencing concessions identified by the government at the time of the plea, but went beyond the terms of the written agreement. The government describes this side agreement as one in which Peavy was to cooperate with the government and the government was to make this cooperation known to the court at the time of sentencing. Peavy has no quarrel with this characterization as far as it goes; however, he contends that the FBI agents promised him as well that a motion to reduce his sentence would be filed and that he would ultimately serve no more than two years of his term of imprisonment. The government denies that *these* promises were made. Even if we accept the government's description of the oral agreement, however, the complete terms were never disclosed to the district court at the time of the plea.

The parties made no reference to a cooperation agreement during the plea hearing, and there is no evidence that the district court was aware of the agreement when it accepted Peavy's plea. Contrary to the requirements of Fed.R.Crim.P. 11(d)[3], the court did not ask Peavy whether there were any promises apart from the plea agreement. Such inquiry would have prompted disclosure of the promises on which Peavy relies here, or, if Peavy had remained silent, likely would foreclose his postconviction reliance on these promises. The court's omission is not the sole cause of the incomplete record in this case, however, for the parties' silence regarding Peavy's cooperation agreement was deliberate.[4]

 "[N]o procedural device for the taking of guilty pleas is so perfect in design and

---

**3.** Rule 11(d) states in pertinent part:

> **Insuring that the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that a plea is voluntary *and not the result of force or threats or of promises apart from a plea agreement.*

(Emphasis added.) The *Bench Book for District Judges,* 1.06A (3d ed.1993), recommends that the court not only confirm the terms of the plea agreement with the defendant, but also ask whether "anyone [has] made any other or different promise or assurance to you of any kind in an effort to induce you to enter a plea of guilty ... in this case[.]"

**4.** The government acknowledged the existence of Peavy's side cooperation agreement at oral argument and in correspondence to Peavy's attorney.

exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge.'" *Blackledge,* 431 U.S. at 73, 97 S.Ct. at 1629 (quoting *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973)). Whether or not guilty pleas entered in accordance with Rule 11 are impervious to collateral attack is not the issue in this case, for whatever the benefits of the prophylactic measures prescribed by that rule, they can be of no assistance when they are deliberately circumvented. When the record of a plea is incomplete, we cannot draw meaningful inferences from the defendant's silence on any given disputed issue of fact. For this reason, the record of Peavy's guilty plea and sentencing in this case provides insufficient grounds on which to conclude that Peavy's claims were subject to summary dismissal.

■ The evidence presented in connection with Peavy's postconviction motions is likewise insufficient. The only *evidence* presented was the affidavit of Peavy's counsel, who testified that he was present to hear the agents' promises to Peavy. When presented with a record such as this, and a § 2255 motion supported by admissible evidence, the government must present evidence in support of its position. The unverified responses filed in this case were plainly inadequate. The district court's factual findings in support of its dismissal of Peavy's motion, based on the government's responses, have no evidentiary support. We conclude that Peavy is entitled to an evidentiary hearing on his motion, and remand for this purpose.

■ In reaching this resolution, we remain mindful of the Supreme Court's admonition that guilty pleas be accorded a "great measure of finality." *Blackledge,* 431 U.S. at 71, 97 S.Ct. at 1628. To achieve that goal, the district court must take pains to ensure that all of the promises or assurances that the defendant claims to have received are disclosed. Fed.R.Crim.P. 11(d). Further, counsel for the government and the defen-

dant must fully inform the court of all terms of the plea bargain, whether or not specifically asked. Safety and confidentiality concerns can and should be accommodated through *in camera* proceedings.

## B. Relief Available

■ This court traditionally has analyzed the respective obligations of the parties under general principles of contract law. Because a guilty plea involves the waiver of fundamental constitutional rights, however, the analogy to a traditional contract is not complete, "and application of ordinary contract law principles to a plea agreement is not always appropriate." *United States v. Skidmore,* 998 F.2d 372, 375 (6th Cir.1993). "Unlike the private contract situation, the validity of a bargained guilty plea depends finally upon the voluntariness and intelligence with which the defendant—and not his counsel—enters the bargained plea." *United States v. Harvey,* 791 F.2d 294, 301 (4th Cir.1986) (citing *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984)). When the prosecution breaches the plea agreement, the proper remedy may be either specific performance or permitting the defendant to withdraw his plea. *Id.; Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). The choice between these remedies is not up to the defendant but, rather, rests in the sound discretion of the district court. *Kingsley v. United States,* 968 F.2d 109, 113 (1st Cir.1992).

■ The relief available to Peavy is limited by the terms of Rule 35, which permit the reduction of a sentence within a limited time, which, under the facts of this case, has long since passed. The government cannot now be required to file a delayed Rule 35 motion.[5] While in appropriate circumstances a defendant may be entitled to specific performance of promises made by the government to induce a guilty plea, *e.g., United States v. Canada,* 960 F.2d 263 (1st Cir.1992), this is

---

5. *United States v. Addonizio,* 442 U.S. 178, 189, 99 S.Ct. 2235, 2242–43, 60 L.Ed.2d 805 (1979); Fed.R.Crim.P. 45(b); *United States v. Taylor,* 768 F.2d 114 (6th Cir.1985); *United States v. Blanton,* 739 F.2d 209 (6th Cir.1984). *Cf. United States v. Davis,* 992 F.2d 635 (6th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 265, 126 L.Ed.2d 217 (1993) (court lacks power to enter judgment of acquittal beyond the time provided in applicable rule).

not such a case. Further, we stress here that Peavy is not entitled to specific performance of the alleged promise that he would serve only two years of the sentence imposed by the district court. The FBI agents clearly had no authority, actual or apparent, to bind the district court, and it is not alleged that the court ratified or otherwise affirmed any such assurance.

Thus, the sole question is whether Peavy should be permitted to withdraw his plea. On remand, the district court must determine whether the FBI agents made promises to Peavy, and, if so, determine precisely what those promises were. Additionally, the court must determine whether the agents had the apparent authority to make the disputed promises on behalf of the government, taking into account the secrecy surrounding Peavy's cooperation agreement, and whether Peavy relied to his detriment on the promises. *See United States v. Streebing*, 987 F.2d 368, 372–73 (6th Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993). Ultimately, the court must determine whether Peavy's plea was "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

**REVERSED** and **REMANDED** for proceedings consistent with this opinion.

BATCHELDER, Circuit Judge, dissenting.

I must respectfully dissent in this case, not because I believe that the majority's statement of the law is incorrect, but because I cannot agree that on the facts of this case there was any reason for the district court to have held an evidentiary hearing on the defendant's motion.

28 U.S.C. § 2255 requires that the district court hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ..." Here, the motion and the files and records show precisely that.

While it would have been preferable for the trial court to inquire at the plea hearing whether there had been promises made to the defendant other than those contained in the written plea agreement, that written agreement clearly states that there were no other promises. Furthermore, it is clear from the transcript of the plea hearing that, not only did both the defendant and his counsel listen to the government counsel describe the written plea agreement and assure the court that that description was accurate, neither the defendant nor his counsel made any reference to any kind of agreement that the government would file a Rule 35 motion or that there would be any kind of cap on defendant's sentence or limitation on the time he would serve. Neither did defendant or his counsel make any such reference at the sentencing hearing. There is no indication that the defendant or his counsel advised the district court at any time that there had been any such *sub rosa* discussions or promises or agreements.

I agree with the majority's statement that the United States Attorney's office responded to defendant's motions by stating that there had been no written plea agreement. Since the written plea agreement is part of the record in the case, and was signed by an Assistant United States Attorney, I can only assume that the U.S. Attorney's office prepared the response without reviewing the facts of the case. I do not, however, concede that the government's carelessness can change the record in the case. Furthermore, the government's contention that it orally agreed to and in fact did advise the court in chambers of defendant's cooperation in ongoing investigations is not inconsistent with the written plea agreement. Indeed, the transcript of the sentencing hearing demonstrates that the government advised the court at sentencing that although the probation report noted that the defendant was eligible for enhancement because of a prior drug record, the government had elected not to file the information required to proceed against the defendant under those enhancement provisions.

These ambiguities in the record, however, simply are not sufficient to require the district court to hold an evidentiary hearing when the motions themselves and the single

supporting affidavit are carefully reviewed.[1] The Motion to Withdraw Plea, filed by the defendant two years after he was sentenced, claims that in a meeting in the U.S. Marshal's office prior to his entering a guilty plea, "with counsel present, and with two F.B.I. agents in attendance," defendant "was advised" that the U.S. Attorney's office would, one year after sentencing, file a Rule 35 Motion. The motion also claims that "pursuant to the said terms thereof, Defendant was to serve a term of two years or less pursuant to said agreement ..." Defendant also claimed in this motion that the taking of the plea in open court included a comment by the court about the plea's being made in light of defendant's cooperation. Aside from the fact that the transcript of the plea hearing contains no such comment, the motion is remarkable, not for what it says, but for what it does not say. It does not say when the alleged meeting occurred; it does not say who was actually present, and in particular, it does not identify "counsel," *i.e.*, it does not say that defendant's counsel, Robert Ruggieri, or any specific individual in the United States Attorney's office was present; it does not say who "advised" defendant that the United States Attorney's office would file a Rule 35 motion. The motion certainly implies many things, but it specifies nothing.

The affidavit of defendant's counsel, Robert Ruggieri, is similarly remarkable for what it does not say. That affidavit does not say that Ruggieri was present at the meeting in the United States Marshal's office; rather it says that "during the course of the arrest and incarceration of the Defendant, that he entered into plea bargain arrangements with the various investigative officers in the pending action," and that "pursuant to the arrangements herein Defendant was brought to the United States Marshall's [sic] Office, the parties agreed to terms, and a 'handshake' was exchanged by all parties hereto." The affidavit does not identify who these "parties" were, and it does not indicate by whom "the Defendant ... was told that he would serve a term of not more than two years."

The second motion filed by defendant, this one a proper § 2255 motion, claims that the defendant and his counsel agreed with the FBI that defendant would serve no more than two years in prison. Further, this motion claims that *after defendant was sentenced,* the "local U.S. Attorney" advised defendant's counsel that if defendant testified in a trial in Detroit, it would be helpful to his getting a Rule 35 motion filed but that it could not be guaranteed, and refers to correspondence from "U.S. Attorney Ron Waterstreet", apparently from Detroit, to "the Cleveland USDA, Ronald Bakeman," advising that a Rule 35 motion was not warranted. Defendant then claims, "As a result thereof, a Rule 35 Motion was not filed and it appears that there was no intent to file same in total contravention of the plea agreement struck by the Defendant, defense counsel, and the local F.B.I. agents." Appended to this motion was a copy of the earlier Motion to Withdraw Plea with its affidavit of Robert Ruggieri. The § 2255 motion was supported by no new or additional affidavits or other evidence.

The majority holds that in the face of this "§ 2255 motion supported by admissible evidence" the government was obliged to file affidavits in support of its position, and that without them, the district court was required to hold an evidentiary hearing. I would hold that whatever the Ruggieri affidavit is, it is not support for the motions filed by the defendant. The district judge was the same judge who took the plea and pronounced the sentence. He knew who the players in this case were, he knew that no one, and particularly not the defendant and his counsel whose interests were the most vitally affected, had so much as hinted at any side agreements. The district court was entitled, upon reading these motions and the affidavit, to notice the glaring lack of specificity to the allegations, and particularly the failure of either the motion or the affidavit to name even one individual who could be called upon to admit or deny the allegation that prior to his pleading guilty, defendant had been promised a Rule 35 Motion and a limit of two years prison

---

1. Because the specific language of these documents is the crux of this case, they are included as the appendix to this dissent.

time. Under these circumstances, the district court was correct in concluding that the amorphous motions and affidavit were so flatly contradicted by the record that no hearing was required.

But the district court had an additional basis for its conclusion that no evidentiary hearing was required. The motions and affidavit, apart from their utter lack of specificity, make a claim which is "palpably incredible" and "patently frivolous." *Blackledge v. Allison*, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977). Defendant attempts in these motions to create the illusion that his counsel worked out a deal on his behalf which consisted of two parts: First, the government would file a Rule 35 Motion within one year after the defendant's sentencing, and second, the sentence which the defendant would serve would be no more than two years. These two things are not claimed in the alternative; rather, defendant says he was promised both. Defendant does not claim that he was promised these things without benefit of counsel. And defendant's counsel must be presumed to know that neither the U.S. Attorney's office nor the FBI can represent to a defendant what the outcome of a Rule 35 Motion will be, and that the FBI does not have the authority to make any representations to a defendant about what his sentence will be. Even the most generous reading of the motions and affidavit filed by this defendant and his counsel reveals that they do not state that the *U.S. Attorney's office* made any promise to this defendant that he would serve no more than two years. Even if these documents could be read to state that the U.S. Attorney's office promised to file a Rule 35 Motion (which they do not), the clear thrust of defendant's

complaint here is that the government promised him that he would be out of prison in two years. The district court was correct in concluding that this claim was so patently frivolous that no evidentiary hearing was necessary.

It is important to point out here that defendant, or at least his counsel, apparently could have provided some specific information to the district court in those motions and the affidavit. Appended to the reply brief of the defendant on this appeal is an affidavit of counsel which contains considerably greater detail. Most of that information relates to matters which occurred after the defendant was sentenced, and therefore is irrelevant. However, there are at least some actual facts contained in the affidavit which could have been presented to the trial court. Had those been included in the motions or affidavit, perhaps the trial court would have had the opportunity to differently assess the need for an evidentiary hearing.[2] Since they were not, we cannot consider them on appeal, and they are not relevant to our consideration of whether the district court, on the evidence before it, should have held an evidentiary hearing.

Here counsel admitted to the bar of the federal court appeared in open court with his client for the purpose of entering a plea of guilty; there was a written plea agreement which included a specific statement that this agreement is the only agreement between the parties; that written agreement was signed both by the defendant and his counsel;[3] the trial judge, in addition to the open court proceeding, held an in-chambers proceeding at the request of the defendant to discuss the defendant's cooperation; and neither counsel nor the defendant ever made

2. Indeed, if those facts had been included in the motions or the affidavit, criticism of the government's failure to file opposing affidavits would be justified. But without so much as a single name of a single individual who allegedly engaged in the preplea promises, the government was hardly in a position to file affidavits proving that no such promises were ever made.

3. The majority notes that Rule 11 requires that the district court address the defendant in open court to determine that the plea is not the result of force or threats or of promises apart from the

plea agreement. In this case, as I have conceded, the district court did not specifically ask if there were any agreements in addition to the Rule 11 Agreement. However, the Rule 11 Agreement was in writing, was signed by the defendant and his counsel, and specifically stated that there were no other such agreements. The district court specifically inquired of both the defendant and his counsel whether their understanding of the plea agreement's terms was as the government had explained them on the record and both the defendant and his counsel said that it was.

mention of any side agreements. Under those circumstances, the trial judge was entitled to conclude that there were no side agreements. And when, two years later, the trial judge was confronted by motions and affidavits that do not make specific factual claims contradicting that earlier record, but instead consist of vague, equivocal and inexplicit allegations that nameless agents of the government made promises which counsel is required to know were without authority, the district judge is entitled to recognize those as being patently frivolous.

For us to hold that under these circumstances the trial judge was required to take evidence is to sanction, not only the practice of side deals, but the idea that a lawyer practicing in federal court is not held to the knowledge that only the judge can sentence, that the FBI cannot make promises about specific sentences, that the judge is never bound by FBI representations. Worse yet, it sanctions the idea that making side deals *and never disclosing them to the sentencing judge* is somehow acceptable.

I would affirm the order of the district court.

### APPENDIX

IN THE UNITED STATES
DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA

Plaintiff,

vs.

EDWIN PEAVY

Defendant.

CASE NO.: 1:89CR0209

JUDGE JOHN M. MANOS

**MOTION TO WITHDRAW PLEA
PER FEDERAL CRIMINAL
RULE 32(d)**

Now comes the Defendant Edwin Peavy, and states that he was sentenced by this Honorable Court on April 24, 1990 pursuant to the terms of a Judgment Entry dated May 2, 1990 and received for filing with the United States Clerk of Court's office on said date.

Pursuant to the terms of the Judgment Entry, Defendant was sentenced to a term of ninety-two (92) months with various provisions attached thereto.

However, pursuant to the plea entered into in the within cause, the Defendant, with counsel present, and with two F.B.I. agents in attendance, entered into a plea bargain arrangement, which terms were agreed upon pursuant to a hand shake in the United States Marshall's office in the United States District Courthouse basement. Subsequently, a plea bargain was drafted and signed by the various parties, but such matters were held in abeyance due to the delicate nature of the case.

Pursuant to said plea, the Defendant was advised that the United States District Attorney's Office would file on his behalf a Rule 35 Motion within a period of one year from the date of the Defendant's sentencing.

In support of Defendant's plea agreement, he did what was asked of him, carried out the matters that were required of him, not only in this jurisdiction but in others, did all that was asked of him, and was ready willing and able to perform as required.

The taking of the plea by this Honorable Court, in open court, contains a comment by this Honorable Court, that the plea is being made in light of the fact that the Defendant has openly cooperated with the United States Government, and so stated upon the official court record.

One year has elapsed since the date of the Defendant's sentencing, and pursuant to the said terms thereof, Defendant was to serve a term of two years or less pursuant to said agreement, but the United States District Attorney's Office has still failed to notify and/or file any Motions on behalf of this Defendant in total contravention of the plea bargain agreement and understanding which this Defendant and his counsel fully understood.

The expiration of two years of the Defendant's sentence will expire, this date April 24,

1992, in total contravention of the Defendant's plea bargain agreement.

As a result thereof, this Defendant, Edwin Peavy, pursuant to Federal Criminal Rule 32(d) and the requirements of 28 U.S.C. Section 2255, and pursuant to the Court's holdings in *United States v. Michaelson,* 552 F.2d 472 1977 and *Hill v. United States,* 368 U.S. 424 which discusses "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure" files his Motion for the Motion to Vacate his plea of April 24, 1990 based on the complete failure of the United States District Attorney's Office, or other federal bureaus to carry out the plea bargain agreement, which operates as a total miscarriage of justice.

Counsel for Defendant states that the within Motion is well founded, that the United States District Attorney's Office has failed to respond in any fashion, even knowing the total circumstances as apply hereto, which failure to act has totally deprived this Defendant of the total plea bargain agreement as entered into by and between the various parties hereto.

Respectfully submitted:

/S/ Robert A. Ruggeri
ROBERT A. RUGGERI
Attorney for Defendant
1276 West Third Street
616 Marion Building
Cleveland, Ohio 44113
(216) 861-1940

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Withdraw Plea per Federal Criminal Rule 32(d) has been sent to Ron Bakeman, United States District Attorney, U.S. Department of Justice, Northern District of Ohio, 1404 East 9th Street—Suite 500, Cleveland, Ohio 44114, by regular U.S. mail on this ___ day of April, 1992.

/S/ Robert A. Ruggeri
ROBERT A. RUGGERI
Attorney for Defendant

STATE OF OHIO

VS.

CUYAHOGA COUNTY

### AFFIDAVIT

Robert A. Ruggeri, first being duly sworn deposes and states the following:

1. That he is the attorney of record for and on behalf of the Defendant Edwin A. Peavy in Case No. 1:89CR0209 and that he still continues to represent the Defendant at this time.

2. That during the course of the arrest and incarceration of the Defendant, that he entered into plea bargain arrangements with the various investigative officers in the pending action.

3. That pursuant to the arrangements herein Defendant was brought to the United States Marshall's Office, the parties agreed to terms, and a "handshake" was exchanged by all parties hereto.

4. The terms of the written plea bargain agreement did not contain all pertinent details and matters in that the arrest of the Defendant was very touchy and that all leaks were hoped to be prevented and anyone becoming aware or ascertaining any knowledge of this Defendant's participation in the then pending matter or any subsequent matters thereto.

5. The Defendant did, on numerous occasions, assist and cooperate as required in this jurisdiction, made himself available in the State of Michigan, and was ready and willing and able to perform at all times, and did as he was required and or requested to do.

6. In spite of the numerous efforts and assistance given by this Defendant, and the arrest and convictions ascertained as a result of this Defendant's cooperation, and even in light of same, the United States District Attorney's Office refused and continues to refuse to file a Rule 35 Motion or subsequent Motion thereto.

7. The Defendant, based upon the assistance rendered, was told that he would serve a term of not more than two years. The term of two years expires effective April 24,

1992, and the United States District Attorney's Office and the F.B.I. failed to come forward, and still fails to come forward, in any effort and/or manner to carry out the plea bargain arrangement and/or to correct the manifest misjustice which is now occurring.

8. Defendant still, even though he has been denied any assistance by the F.B.I., still makes himself available when called and still continues to assist when asked, even in light of the fact that the various federal authorities have turned their back on him, and for no apparent reason.

9. Affiant further states that there has been a total breach of good faith in the plea bargain arrangements and agreement, and the Defendant continues to remain in jail due to the continued failure of any of the federal authorities and/or United States District Attorney to come forward and correct this matter.

FURTHER AFFIANT SAYETH NAUGHT.

/S/ Robert A. Ruggeri
ROBERT A. RUGGERI

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE THIS — DAY OF APRIL, 1992.

/S/ [signature]
Notary Public

## MOTION TO VACATE, SET ASIDE OR CORRECT AN ORDER OF SENTENCE PURSUANT TO 28 USC SECTION 2255

Now comes the Defendant, Edwin Peavy, by and through counsel, Robert A. Ruggeri, and moves this Honorable Court to set the within matter for hearing at the convenience of this Honorable Court pursuant to this Motion as filed and pursuant to a Motion filed on April 24, 1992 entitled Motion to Withdraw Plea per Federal Criminal Rule 32(d).

Plaintiff is currently incarcerated in a federal penitentiary and serving a term of incarceration of approximately eight years.

On or about April 24, 1990, the Defendant was sentenced to a federal penitentiary according to law and "supposedly" pursuant to an agreement of incarceration to which this Defendant participated in.

Defendant and counsel mutually agreed with the investigating body, namely the F.B.I., that if the Defendant cooperated, and assisted them in ongoing investigations, that this Defendant, who was under federal detainer, would have a bond in the amount of Ten Thousand and 00/100 Dollars ($10,-000.00) set, would be released on bond, would enter into a negotiated plea, would continue to assist the F.B.I. in the course of their undercover operations giving full assistance and testimony where needed, and as such, was to serve a term of two years but no more than two years according to the mutual agreement of the parties.

On April 24, 1990, the Defendant voluntarily appeared before this Honorable Court for sentencing, and was granted the authority to voluntarily surrender when called upon to do so and began his federal sentence on said date namely, April 24, 1990.

Pursuant to the plea agreement of which counsel for Defendant and Defendant were under, counsel for Defendant called the Assistant DA to ensure that a Rule 35 Motion would be filed by the USDA's office prior to the 24th day of April, 1991.

Previous to this, the wife of the Defendant had been calling counsel advising that strangers had been pulling up into her driveway, flashing lights honking horns, and that she continuously received numerous phone calls throughout the day and night causing her to change her phone on at least two or three occasions. On at least one occasion, and individual confronted the wife of the Defendant advising her that he knew her husband was an informant and that he was only waiting for his trial date to watch her husband appear in court and testify against him and then he would be real certain.

The wife of the Defendant lives alone and has five young children. Obviously, this put her at a great disadvantage and caused her great concern as it did her husband who was incarcerated and unable to render any assistance.

While the Defendant was incarcerated and the ongoing threats were continuing, a case arose in Wayne County Michigan wherein it was requested that the Defendant Peavy give testimony. Counsel, upon learning of this, contacted the local USDA as well as the

USDA in Detroit advising that he did not think it smart at this time for the Defendant to appear and that he and his family could possibly be in grave danger if he should so testify.

The local US Attorney, however, advised counsel that if the Defendant did testify in Detroit, and if he received a favorable report from Detroit as to the assistance rendered by the Defendant, then it would probably be "icing on the cake", as relates to the Defendant's Rule 35 Motion, but this could not be guaranteed and/or promised by the USDA.

On at least four or five occasions, the Defendant was moved to Michigan for the purposes of giving testimony, the trial being continued on numerous occasions and then subsequently this matter was set for trial. Counsel arrived in Detroit and checked into a local hotel to be present while the Defendant Peavy was being called upon to give testimony and to be there to assist if the need arose. The two investigating F.B.I. officers from Cleveland were also on hand and prepared the Defendant for his testimony in the presence of this counsel in the local jail lock up. The Defendant was ready, willing and able at all times to give testimony and was so prepared by the two local F.B.I. agents who were his case agents in Cleveland.

At a point in time it was determined that the testimony of the Defendant would not be needed and that the USDA from Detroit would proceed solely on the testimony of the F.B.I. agents and would exclude Defendant Peavy.

Shortly thereafter, a letter was received from U.S. Attorney Ron Waterstreet who stated that the Defendant Peavy rendered no services of any valuable nature and therefore no recommendation of any kind was set forth in Mr. Waterstreet's correspondence to the Cleveland USDA, Ronald Bakeman. As a result thereof, a Rule 35 Motion was not filed and it appears that there was no intent to file same in total contravention of the plea agreement struck by the Defendant, defense counsel, and the local F.B.I. agents.

It would appear that this Defendant has been mislead and relied totally upon an agreement, and participated with the F.B.I.

agents, who knew they had no authority to grant such an agreement, a two-year term of incarceration, to this Defendant, and totally mislead him and used him throughout their course of investigations.

Therefore, so that the record is clear the following facts are added in support of this Motion, and a copy of the earlier pleading time stamped April 24, 1992 together with an Affidavit of this counsel is attached hereto and is requested to be made a part of this Motion pursuant to the terms and mandates of 28 U.S.C. Section 255 as pertains to a person and/or individual under federal sentence and being currently held in federal custody.

1. A plea negotiation was entered into, conducted and judgment entered in the Northern District Federal Court, Eastern Division of Ohio;

2. The date of the plea was April 24, 1990 and the judgment entry was dated for filing and received as of May 2, 1990;

3. The Defendant was sentenced to a term of ninety-two (92) months;

4. The Defendant Peavy entered a plea of guilty to a negotiated plea as relates to Count One, possession of more than 500 grams of cocaine; Count Two was nolled;

5. No testimony was given by the Defendant other than direct responses to questions asked by this Honorable Court and no appeal was perfected and/or filed on behalf of the Defendant for the conviction in that the conviction and judgment entry, was supposedly to run for a term of two (2) years, for which this Defendant relied upon and for which a Rule 35 Motion was to be timely filed within a one-year period and to be filed no later than April 24, 1991;

6. There is currently pending before this Honorable Court a Motion to Withdraw Plea pursuant to FCR 32(d) which was filed on April 24, 1992, to which the government has responded but which no action has been rendered.

It is therefore respectfully requested that this Honorable Court set this matter for hearing pursuant to the Defendant's Motion herein based upon the facts and allegations

as set forth in this Section 2255 Motion together with the Motion to Withdraw Plea as attached hereto.

Respectfully submitted:

/S/ Robert A. Ruggeri

ROBERT A. RUGGERI
# 0023790
Attorney for Defendant
1276 West Third Street
616 Marion Building
Cleveland, Ohio 44113
(216) 861–1940