Rehearing granted, March 8, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

DAVID RAY CALLOWAY, a/k/a Tony Montana,

       *Defendant-Appellant.*

⎬   No. 03-4900

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

DANA SANDER,
       *Defendant-Appellant.*

⎬   No. 03-4906

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, District Judge.
(CR-03-142)

Submitted: June 30, 2004

Decided: September 22, 2004

Before LUTTIG and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Thomas N. Cochran, Assistant Federal Public Defender, Greensboro, North Carolina; H. Dean Steward, San Clemente, California, for Appellants. Anna Mills Wagoner, United States Attorney, Paul A. Weinman, Assistant United States Attorney, Winston-Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

David Ray Calloway and Dana Sander pled guilty to conspiracy to distribute more than 50 grams of cocaine base (crack), 21 U.S.C. § 846 (2000), and Calloway also pled guilty to using or carrying a firearm during a drug crime, 18 U.S.C. § 924(c) (2000). Calloway received a sentence of 170 months imprisonment for the conspiracy and a consecutive sixty-month term for the § 924(c) count. Sander was sentenced to a term of 210 months imprisonment. Both Calloway and Sander appeal their sentences. We affirm.

Calloway and Sander were arrested on February 11, 2003, after Calloway sold 1.9 grams of crack to a confidential informant. Sander had followed Calloway to the confidential informant's home in a separate car and got into Calloway's car immediately following the sale. From Calloway's car, law enforcement officers retrieved the marked bills the confidential informant had paid him, an electronic scale, and a loaded revolver with an obliterated serial number concealed in a can disguised as a dog food can. They also found 14.2 grams of powder cocaine, 143.1 grams of crack, plastic bags, and a crack pipe in hidden compartments in spray cans disguised as cans of furniture wax, foot powder, and hair spray. Sander's car contained an electronic scale, as well as crack residue and plastic bags hidden in a hair spray can.

Sander gave a statement after her arrest in which she said she met Calloway at the confidential informant's home to buy an eight-ball (3.5 grams) of crack. She said she sold crack and that Calloway was one of her sources. She said she bought an eight-ball of crack from him at least three times a week and that she had driven him to Atlanta three times in the preceding months so that he could buy crack, which he later sold in North Carolina.

In June 2003, Sander pled guilty to conspiring with Calloway to distribute more than fifty grams of crack from December 2002 to February 11, 2003. On August 7, 2003, three days before his scheduled trial date, Calloway entered a guilty plea to the conspiracy count and a § 924(c) offense. Calloway and Sander were sentenced together. Over Calloway's objection, the district court awarded him a two-level adjustment pursuant to *U.S. Sentencing Guidelines Manual* § 3B1.1(c) (2003) because he had organized the trips to Atlanta to obtain drugs from a source known to him but not known to Sander. The court found that Calloway had "generally timely accepted responsibility" and awarded him a two-level adjustment under § 3E1.1, but declined to give him a three-level adjustment because his acceptance was "not as full as it should be." The court determined that Sander was responsible for all the drugs Calloway possessed when he was arrested and for the 1.9 grams of crack he sold to the confidential informant.

On appeal, Calloway first contends that the district court erred in refusing him a three-level adjustment for acceptance of responsibility once it found that his acceptance was timely. We find no error, for the following reasons. Although the probation officer used the 2002 *Guidelines Manual* in preparing the presentence report, Calloway was sentenced on November 6, 2003, after the 2003 *Guidelines Manual* went into effect. Therefore, the 2003 *Guidelines Manual* applied. *See United States v. Morrow*, 925 F.2d 779, 782-83 (4th Cir. 1991); USSG § 1B1.11(b)(1) (*Guidelines Manual* in effect on date of sentencing shall be used unless district court determines that its use would violate Ex Post Facto Clause).

Under both Amendment 649 to § 3E1.1, effective on April 30, 2003, and the 2003 *Guidelines Manual*, a defendant may receive a two-level decrease in his offense level if the district court determines

that he has demonstrated acceptance of responsibility for his crime. USSG § 3E1.1(a). A three-level adjustment is possible under § 3E1.1(b) only if the offense level is 16 or more and the government moves for the additional decrease "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial . . . ." Application Note 6 currently explains that a formal government motion is required for the additional level because "the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial. . . ." The government did not move for a three-level adjustment in Calloway's case. Instead, it argued that Calloway had not demonstrated acceptance of responsibility at all.

Calloway argues on appeal that the district court had no discretion to refuse him the three-level adjustment once it found that he had accepted responsibility and that his guilty plea was timely. Under the 2002 version of § 3E1.1, his argument would have merit. However, under the 2003 guideline, the district court could not grant more than a two-level adjustment without a government motion.

Calloway maintains that application of the amendment requiring a government motion, effective on April 30, 2003, would violate the Ex Post Facto Clause because his offense ended with his arrest in February 2003. A violation of the Ex Post Facto Clause occurs when the guidelines in effect on the date of sentencing inflict a greater punishment than those in effect on the last date of the offense of conviction. *See* USSG § 1B1.11, comment. (n.2). In Calloway's case, the amendment requiring a government motion for a three-level adjustment under § 3E1.1 did not increase the punishment for his offense. Therefore, the district court did not err in awarding only a two-level adjustment.

Next, Calloway challenges the two-level role adjustment under § 3B1.1(c). We review the district court's role determination for clear error. *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002).

Calloway concedes that he sold drugs to Sander, but asserts that he neither managed or supervised her, nor organized or led a joint crimi-

nal activity in which they were both participants. Because Calloway and Sander pled guilty to conspiring with each other to distribute at least 50 grams of crack, there was no question that they were involved in a joint criminal activity. The district court determined that Calloway was an organizer because he arranged the trips to Atlanta to obtain crack; it was he who had a source there. Sander admitted that she knew the purpose of the trips was for Calloway to buy drugs which he intended to sell in North Carolina, that Calloway distributed crack to her during the trips, and that she bought crack from him on a regular basis in North Carolina. On these facts, the district court did not clearly err in finding that the role adjustment was warranted on the ground that Calloway was an organizer. It was not necessary that he have directed or exercised control over Sander.

Finally, Sander maintains that the district court clearly erred in determining the amount of crack for which she was responsible under USSG § 2D1.1. The district court's determination of the quantity of drugs attributable to a defendant for sentencing purposes is a factual question reviewed for clear error. *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). A defendant involved in a conspiracy is responsible for all reasonably foreseeable conduct of others in furtherance of their jointly undertaken criminal activity, USSG § 1B1.3(a)(1)(B), unless those acts are beyond the scope of the defendant's agreement. *United States v. Gilliam*, 987 F.2d 1009, 1012-13 (4th Cir. 1993).

Sander argues that she was not responsible for the 145 grams of crack Calloway possessed when they were arrested because her agreement with him was limited to acting as driver and companion on the three trips to Atlanta where he obtained cocaine for himself. Because there was no evidence of how much crack Calloway obtained on their trips to Atlanta, Sander argues that the district court should have attributed to her only the approximately 5.5 grams of crack she received from him for her personal use during the trips.

Sander's argument fails because Calloway's crack sales in North Carolina were within the scope of her agreement with him, as evidenced by her admission that she frequently bought crack from him and resold it. Therefore, whatever quantities of crack he obtained in Atlanta were also attributable to her as relevant conduct. Because

there was no evidence that Calloway had any source other than the person in Atlanta, the 145 grams of crack and 14.2 grams of cocaine he possessed when arrested were correctly attributed to Sander. The 1.9 grams of crack Calloway sold to the confidential informant, while not significant in the calculation of Sander's base offense level, were also properly attributed to her. Consequently, the district court did not clearly err in determining the quantity of drugs for which Sander was responsible.

We therefore affirm the sentences imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*