[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 24, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 04-13493

_____

D. C. Docket No. 03-00207-CR-002-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIE CHARLENE DANIEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(May 24, 2005)**

Before CARNES and PRYOR, Circuit Judges, and FORRESTER*, District Judge.

PER CURIAM:

_____

* Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

In December 2003, Julie Charlene Daniel pleaded guilty to one count of conspiracy to possess with intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 846(a)(1), 846, and one count of possession with intent to distribute approximately one ounce of methamphetamine, in violation of 21 U.S.C. § 846(a)(1). The district court sentenced Daniel to seventy months imprisonment and four years of supervised release. Daniel appeals her sentence on two grounds. She first asserts that the district court erred by denying her motion to compel the government to file a U.S.S.G. § 5K1.1 motion for a downward departure due to her substantial assistance. Also, citing <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004), and <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005), Daniel contends that the district court erred by enhancing her sentence based on facts that were neither found by a jury nor admitted by her using mandatory guidelines. Because the error of the district court under <u>Booker</u> was not harmless, we vacate Daniel's sentence and remand to the district court for resentencing.

## I. BACKGROUND

Without the benefit of a plea agreement, Daniel pleaded guilty to both drug counts against her. During the plea colloquy, Daniel indicated that she had chosen not to enter the plea agreement proposed by the government because she did not

2

want to waive her right to appeal the drug quantity found by the district court.

Daniel did, however, sign and file in open court a document entitled "Factual

Resume" in which she "agree[d] and stipulate[d] that the Government can prove

[the] facts [contained in the factual resume] beyond a reasonable doubt." The bulk

of that document recounts Daniel's involvement in a drug conspiracy involving

several other people including her brother. It ends with the following statement:

> The parties agree that the Court will determine the drug amount for
> which the defendant is responsible at the sentencing hearing and that
> the Government can prove [a] drug amount beyond a reasonable doubt
> of greater than 50 grams of methamphetamine. The Government
> contends that the defendant is accountable for from 1.5 to 5 kilograms
> of methamphetamine as relevant conduct.

During the plea colloquy, Daniel stated that she agreed with the information

contained in the factual resume, with two exceptions: (1) the drug quantities

mentioned to the extent they exceed the minimum statutory amounts referred to in

the indictment and (2) the purity of the methamphetamine to the extent that the

factual resume held her responsible for "ice" methamphetamine, a more pure

version of methamphetamine.[1] Also during the plea colloquy, Daniel

acknowledged that the provision in the factual resume where the parties agreed to

---

[1] During the sentencing hearing, Daniel changed her position somewhat. She stated that her only objection to the drugs discussed in the PSR was to the purity of the drugs, not the quantity. According to Daniel, "there is no objection before the Court as to the findings of the Probation Office as to the quantity."

3

have the district court determine the drug quantity acted as a waiver of any "Apprendi argument with regard to the drug amount."

During Daniel's sentencing hearing, which took place before the Supreme Court handed down its decision in Booker, she argued that Blakely effectively invalidated the federal sentencing guidelines. Though recognizing that Blakely had cast doubt on the continuing viability of the federal sentencing guidelines, the district court nonetheless rejected Daniel's argument and chose to apply the guidelines as written.

At the close of the sentencing hearing, the district court found by a preponderance of the evidence that Daniel was responsible for 221.13 grams of methamphetamine, 2.5 grams of ecstasy, and 31 grams of "ice." With a marijuana equivalency of 1,063.25 kilograms, the district court determined that Daniel's base offense level was 32. See U.S.S.C. § 2D1.1(c)(4). After applying a two-level decrease under the guidelines safety-valve provision and a three-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the court set Daniel's adjusted offense level at 27. With an offense level of 27 and criminal history category of I, the guidelines produced a sentencing range of 70 to 87 months imprisonment. The district court sentenced Daniel to 70 months.

## II. DISCUSSION

Daniel makes two arguments on appeal. She first contends that the district court erred when it denied her motion to compel the government to file a § 5K1.1 motion for a departure based on her substantial assistance. Daniel next argues that the district court erred under <u>Booker</u> when it enhanced her sentence based on facts that were neither found by a jury nor admitted by her using mandatory guidelines. We discuss each argument in turn.

### A. Motion to Compel

Daniel concedes that she never entered into a formal written agreement under which the government would file a § 5K1.1 motion if she provided substantial assistance. Nonetheless, she argues that in several conversations with law enforcement personnel she was promised that, if she cooperated, the government would recommend a sentence below the guidelines range.[2]

Daniel argues that the assistance she provided to the government was substantial and that the government breached its agreement with her by not filing a § 5K1.1 motion. The cooperation that Daniel asserts she provided includes: (1) testifying about her brother's drug activities; (2) providing information to the

---

[2] Even if we accepted Daniel's contention that there was a verbal accord, we agree with the government's argument that it, like most agreements, would have vested the final decision of whether to file a substantial assistance motion in the government's sole discretion.

government about a Anna Marsh, a drug dealer, and conducting two controlled buys with Marsh; (3) preparing to testify against Marsh and Ryan Palmer, another drug dealer.[3]

As we stated in United States v. Nealy, 232 F.3d 825 (11th Cir. 2000):

Under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the government has "a power, not a duty, to file a motion when a defendant has substantially assisted." Wade v. United States, 504 U.S. 181, 112 S. Ct. 1840, 1843 (1992). In Wade, the Supreme Court limited the free exercise of that power only to the extent that the government cannot exercise that power, or fail to exercise that power, for an unconstitutional motive.

Id. at 831. That means that "judicial review is appropriate when there is an allegation and a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion." United States v. Forney, 9 F.3d 1492, 1502–03 (11th Cir. 1993) (emphasis omitted). Daniel did not allege there was an unconstitutional motive behind the government's refusal to file a § 5K1.1 motion.[4] As a result, the district court committed no error in refusing to compel the government to file a § 5K1.1 substantial assistance motion.

_____

[3] Her testimony against Marsh and Palmer was unnecessary because they both pleaded guilty.

[4] The district court conjectured that the government probably would have filed a substantial assistance motion had Daniel not been caught using illegal drugs after being put on conditional release pending the resolution of this case. If that were the motive, it is not an unconstitutional one.

6

## B. Booker Error

Under <u>Booker</u>, there are two kinds of sentencing errors: one is constitutional and the other is statutory. "[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1297 (11th Cir. 2005). In addition, "[a]s a result of <u>Booker</u>'s remedial holding, <u>Booker</u> error exists when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." <u>United States v. Shelton</u>, 400 F.3d 1325, 1330-31 (11th Cir. 2005). Daniel contends that the district court committed both constitutional and statutory error.

Although an argument can be made the Daniel waived her right to appeal any constitutional error, we need not address that issue. It is clear that Daniel did not waive her right to appeal the <u>Booker</u> statutory error. By sentencing Daniel under a mandatory guidelines scheme, the district court committed statutory error under <u>Booker</u>. <u>See</u> <u>id.</u>

Because Daniel preserved her <u>Booker</u> objection, we review for harmless error. <u>See</u> <u>United States v. Mathenia</u>, ___ F.3d ___, No. 04-15250, slip at *5 (11th Cir. May ___, 2005). As we stated in <u>Mathenia</u>:

7

> A non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error.

Id. at *5-6 (marks and citations omitted). The government failed to meet its burden of showing that the Booker statutory error was harmless.

The district court did not say that it would have given the same sentence regardless of whether the guidelines were mandatory or advisory. The district court, instead, stated that "the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation." That statement does little to inform our judgment about what the district court would have done had it treated the guidelines as advisory rather than mandatory. The district court may very well have found that a lower sentence would also address the same concerns.

The comment of the district court that "if the guidelines are determined to be unconstitutional, we'll probably be back here for a resentencing in some form or fashion, or there will be some potential adjustment that will need to be made as a result of . . . any decision that would undermine the guidelines as we know them today" suggests that the district court might be amenable to imposing a different

sentence under an advisory guidelines regime.[5]  In any event, the government has failed to carry its burden of demonstrating "with fair assurance that the sentence was not substantially swayed by the error." Mathenia, ___ F.3d at ___.  We find, therefore, that the Booker statutory error committed by the district court was not harmless.

### III.  CONCLUSION

For the foregoing reasons, Daniel's sentence is VACATED and the case is REMANDED for resentencing in accord with the Booker decision.

---

[5] On remand, the district court must calculate the proper Guideline range, which includes again making findings regarding the quantity and quality of the methamphetamine possessed by Daniel or adopting the previous findings, and then the district court must apply that Guideline range in an advisory manner.  See United States v. Crawford, __ F.3d __, No. 03-15136 (11th Cir. May 2, 2005).