

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2005

# USA v. Valentin

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4358

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Valentin" (2005). *2005 Decisions.* Paper 1136.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1136

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4358

———

UNITED STATES OF AMERICA

v.

NILDA VALENTIN a/k/a MONICA FONTANEZ

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cr-00363-11)
District Judge: Honorable Berle M. Schiller

———

Submitted:  February 10, 2005

Before: BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

(Filed:   May 25, 2005)

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Appellant Nilda Valentin, a/k/a Monica Fontanez, appeals the sentence she received in connection with her role in a drug distribution conspiracy.[1] She specifically appeals a determination by the District Court that it lacked authority in her case to review the Government's refusal to file a motion for relief from the statutory mandatory minimum term of imprisonment. Because Valentin has failed to make a substantial threshold showing that the Government's refusal was based on an unconstitutional motive, the District Court properly concluded that it lacked authority to review the Government's refusal. We therefore affirm the ruling of the District Court.

## I. Facts

Valentin was indicted, along with 31 other individuals, for conspiracy to distribute in excess of 500 kilograms of cocaine and in excess of 100 kilograms of crack base. Valentin pled guilty to conspiracy to distribute more than fifty grams of cocaine base and more than five kilograms of cocaine, and possession with intent to distribute controlled substances. Valentin also pled guilty to possession with intent to distribute controlled substances within 1,000 feet of a school. In addition to pledges to cooperate fully and truthfully with the Government, the plea agreement Valentin entered into with the Government included the following statement:

> The defendant understands and agrees that the government does not intend to move for departure from any statutory mandatory minimum term of

---

[1] While the Defendant/Appellant is referred to as "Fontanez" in some parts of the record, we will refer to her as "Valentin" to avoid confusion.

imprisonment.
(Appellee's Supplemental App. at 5.)

The record indicates that the District Court Judge entered into a colloquy with Valentin to make sure she had read the plea agreement and discussed its terms with her attorney.

Under the United States Sentencing Guidelines, Valentin was to be sentenced to a term of imprisonment ranging from 151 to 188 months. At her sentencing, the Government filed a 5K1.1 motion for a downward departure from the Guideline range. The Government, did not, however, file a motion pursuant to 18 U.S.C. § 3553(e) to impose a sentence below the statutory mandatory minimum. Valentin objected to the failure of the Government to file a § 3553(e) motion.

During sentencing, the District Court Judge expressed that he was perplexed as to why the Government did not exercise its discretion to file a § 3553(e) motion. In response, counsel for the Government stated the following:

> The fact remains is that in our view going forward with a 5(k) motion was a close call in light of the history of the case with this particular defendant. . . . And, because of this particular defendant's conduct during the course of her cooperation, we truly feel that the arrangement we made when she signed her plea agreement, which she agreed to, was that we would consider filing a 5(k) motion, but not a 3553(e) motion. . . . And, that was because of our concerns, real concerns about her candor regarding a murder that took place in February 2001 at the corner of Lawrence Street and Indiana in Philadelphia.
> We had talked with her in the presence of also two homicide detectives, Carlos Perez and Carlos Cruz, about the facts of this very vicious murder where a man essentially had his head blown off with a shotgun. Ms. Valentin provided us with what we believed to be some facts about the murder, but not all the facts that we believe she truly knew. . .
> She gave us the name of an individual that happened to be the shooter, but she

did not identify him as such, even though we believed that she knew him to be the shooter. She just said she saw someone running from the direction where the incident took place from the direction of the murder.

I can't prove to you whether she's telling the truth or not, Your honor. But, we had real concerns, based on her information that she gave us and the nature of it, that she was not being completely and wholly truthful about the facts of that incident.

[T]he Philadelphia homicide detectives were not confident at all in even going forward with her account of what she did tell us, which in some respects was helpful. . . .

In the interim, Ms. [Valentin] never came forward to come clean, so to speak, about the full facts as she knew them in our belief. It's our belief. I can't prove it one way or the other, but it's our belief and it's the belief of the detectives and also Special Agent Turner, who's seated in this courtroom here, about that incident.

There is also a question of just overall cooperative nature. And, what we had here was a defendant who during the course of–we agreed–I believe we agreed to bail at the time when she was first arrested in June 2001. And, while she was on bail she continued to abuse heroin and other drugs. She actually skipped bail. She was a fugitive for quite sometime during a time in which she could have come in and cooperated with us and provided us with timely information and been one of the earlier cooperators in this case. But, as Your Honor is well aware, she did not plead up until the point several days before this case was scheduled for trial, and that's when we actually had a final plea agreement with this defendant.

There was a question of the fact that when we first had proffers with this defendant she set in her own way conditions and ground rules with us about what she was going to talk about and what she wasn't going to talk about. So, she wasn't totally open and complete initially in about– she wasn't totally willing to come forward when she initially started to cooperate with us.

All of these factors were considered when we made the decision to offer the plea agreement that she ultimately accepted upon advice of her counsel. It's not an easy decision.

(App. at 46-51.)

After the statements made by the Government's counsel, defense counsel was given an opportunity to respond to the Government's explanation. In the course of his statements, he referred to a "personality conflict" between the defendant and a government agent. (Id.

at 55.)

In response, the Government's counsel said the following:

> [A]ttitude does matter, Your Honor.  Now, it's–and when I say that, I mean this, that a witnesses (sic) credibility is assessed in many different ways on the witness stand.  And, the fact re– the fact of the matter is is (sic) that the difference between [a co-conspirator's] demeanor and willingness to cooperate and nature–and overall attitude was far more positive than this witness'(sic).
> . . .
> [W]e had real reservations for some time because of the— of this defendant's overall demeanor and attitude towards the whole process and, frankly, towards the Government about whether we—she would be an effective witness on the stand.
> Prior to trial, we met with her again and we did sense a shift and change in her overall attitude towards this whole process and towards the Government.
> . . .  And it wasn't a personality conflict with—I disagree with [defense counsel's] assertion that there was some sort of personality conflict between this witness—this defendant and Special Agent Turner.  Special Agent Turner at all times was the utmost professional in his investigation and in carrying out his duties in connection with the prosecution of this case in every way imaginable, not just with this defendant, but every defendant.  And, there was no—even remotely there's nothing remotely plausible about the suggestion by [defense counsel] that this was all some result of some kind of personality conflict between Special Agent Turner and this defendant.

(Id. at 57-59.)

The District Court Judge sentenced Valentin to 120 months.  Valentin provided no response to an inquiry from the Clerk of Court regarding the applicability of United States v. Booker, 543 U.S. ___, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005).  Thus we do not address the applicability of Booker to Valentin's sentence.

## II. Discussion

Valentin argues that the District Court should have held an evidentiary hearing to

determine if the Government's decision to not file a § 3553(e) motion was based on impermissible animus.  We disagree.

Section 3553(e) reads:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

18 U.S.C. § 3553(e).

Thus, a District Court is only able to impose a sentence below the statutory minimum when the Government makes such a motion or request.  Melendez v. United States, 518 U.S. 120, 125-26 (1996).  This limitation on a District Court's authority "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted."  Wade v. United States, 504 U.S. 181, 185 (1992).  The Government's "discretion when exercising that power," however, "is subject to constitutional limitations that district courts can enforce."  Id.  Accordingly, district courts have the authority to review the Government's refusal to file a § 3553(e) motion upon finding "that the refusal was based on an unconstitutional motive."  Id. at 185-86.  An example of an unconstitutional motive entitling a defendant to relief would be if the Government refused to file a § 3553(e) motion because of the defendant's race or religion.  Id. at 186.

A "defendant has no right to discovery or an evidentiary hearing unless he makes a "substantial threshold showing'" that the Government has refused to file a § 3553(e) motion

for suspect reasons.  Id.  General allegations of improper motive or claims that a defendant provided substantial assistance are insufficient to establish that a defendant is entitled to discovery or an evidentiary hearing, much less a remedy.  Id.

Valentin has failed to make a substantial threshold showing.  She has not alleged that the Government refused to file a § 3553(e) motion for unconstitutional reasons such as her race or her religion.  She has not claimed to have evidence showing an impermissible motivation.  Instead, she makes the general allegation that the Government's refusal was based on a "personal conflict between Government agents and this particular Appellant." (Appellant's Br. at 16.)  The "irrational disdain" that she alleges the Government harbored towards her, (id. at 13), even assuming it is true, is not an unconstitutional motivation for withholding a § 3553(e) motion.  Valentin is therefore not entitled to any relief, including that of holding an evidentiary hearing.  Because it is clear from the record that the District Court Judge correctly ruled that it lacked the authority to review the Government's refusal, we affirm.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.  Accordingly, the judgment of the district court will be affirmed.

———