*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0452p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

LARICO LAMAR SMITH,

        *Defendant-Appellant.*

No. 04-5669

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 03-00100—R. Leon Jordan, District Judge.

Submitted: June 1, 2005

Decided and Filed: November 23, 3005

Before: MOORE and COOK, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Wayne R. Stambaugh, Morristown, Tennessee, for Appellant. Steve H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. Larico L. Smith, Jonesville, Virginia, pro se.

    GWIN, D. J., delivered the opinion of the court, in which MOORE, J., joined. COOK, J. (p. 10), delivered a separate concurring opinion.

_____

## OPINION

_____

    GWIN, District Judge. The instant appeal arises out of Defendant-Appellant Larico Lamar Smith's conviction for possession of ammunition and a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Smith contends on appeal that the district court erred in denying Smith a three-level reduction for acceptance of responsibility under United States Sentencing Guideline provision § 3E1.1(b), when it determined his sentence. Smith also urges this Court to vacate his sentence and remand the case to the district court for resentencing in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a). For the reasons set forth below, the Court

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

**VACATES** Smith's sentence and **REMANDS** the case to the district court for resentencing in light of *Booker*.

## I. Background

### A. Facts

After being charged with a number of similar counts, Defendant-Appellant Larico Lamar Smith ("Smith") pled guilty to two counts of possession of ammunition and a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). The offenses arose in fall 2002 and summer 2003.

Prior to the events giving rise to the instant case, Smith was convicted of two felonies: On October 2, 1994, he was convicted of aggravated assault, and on May 30, 1995, he was convicted of voluntary manslaughter. Smith committed both the manslaughter and the aggravated assault while he was a juvenile, but both cases were transferred to adult court and both resulted in punishment as adult felonies. Smith served six- and four-year terms of imprisonment for the manslaughter and aggravated assault convictions, respectively.

Seven years after his felony convictions, on four separate occasions, Smith illegally possessed ammunition that had traveled in and affected interstate commerce. In the first offense, on September 22, 2002, Defendant Smith approached Nathan Roberts, who was sitting outside a business at 2525 Martin Luther King Boulevard in Knoxville, Tennessee. Smith knocked Roberts to the ground and then shot him with a nine millimeter semi-automatic pistol. One round entered Roberts' leg and lodged in his pelvis area.

In the second offense, on January 18, 2003, Smith shot at Isaiah Holloway, Nathan Roberts, and Christopher Cherry outside a residence at 2717 Tarleton Avenue, Knoxville, Tennessee. Holloway was struck in the back and seriously injured, eventually landing in the neurorespiratory unit. In the third event, on June 20, 2003, Defendant Smith and Cebra Griffin engaged in a gun fight outside Gene's Place at 123 Chestnut Street, Knoxville, Tennessee. During the gun battle, a bystander, Britney Goins, was struck in the right foot and left leg. Finally, on August 5, 2003, police officers arrested Smith after shots were fired near the Walter P. Taylor housing projects in Knoxville, Tennessee. At that scene, Smith was discovered carrying an InterDynamic nine millimeter semiautomatic pistol. Rounds and shell casings at each location were inspected by an ATF expert who gave the opinion that the ammunition and shell casings had all been manufactured outside the state of Tennessee.

### B. Procedural History

On August 5, 2003, a federal grand jury indicted Defendant Smith on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On October 21, 2003, a superseding indictment was returned, charging Appellant with four counts – in three counts with being a felon in possession of ammunition in connection with the three shootings, and in one count with being a felon in possession of ammunition and firearms in connection with the fourth incident, all in violation of 18 U.S.C. § 922(g)(1).

As discussed below, Smith complains that he did not receive appropriate credit for acceptance of responsibility. After arraignment, the district court set the trial for November 18, 2003, then rescheduled it to January 8, 2004, after the superceding indictment was returned. The district court set December 22, 2003, as the cut-off date for a plea agreement. At a pretrial conference with the magistrate judge, the Defendant moved for and was granted a continuance of the trial date, which was reset for February 23, 2004. The plea cutoff date was changed to January 28, 2004, one week after the magistrate judge issued a report and recommendation denying Defendant's motion to suppress. On February 9, 2004, Defendant filed objections to the report and

recommendation. On February 12, 2004, a final pretrial conference was held. One week later, on February 19, 2004 – and 2 business days before the scheduled date of trial – the Defendant notified the Government and the District Court of his intention to plead guilty. The Government had already begun to secure witnesses.

On Monday, February 23, 2004, the date scheduled for trial, Defendant Smith entered a guilty plea to Counts Two and Four of the superseding indictment, pursuant to a plea agreement with the United States. In exchange for Smith's guilty plea, the Government agreed to dismiss the two remaining counts in the superceding indictment. The plea agreement did not include a waiver of appeal. On April 13, 2004, the probation officer prepared the presentence report (PSR) and provided it to the parties.

In calculating the offense level, the PSR first recommended a base-offense level of twenty-four (24), pursuant to U.S.S.G. § 2K2.1(a)(2), with an increase of two (2) levels for possession of three firearms, *see* U.S.S.G. § 2K2.1(b)(1)(A), and an additional increase of four (4) levels for use of a firearm during commission of another felony, *see* U.S.S.G. § 2K2.1(b)(5), in this case, the commission of assault with intent to commit murder and aggravated assault. This calculation would result in an adjusted offense level of thirty (30).

The PSR then noted that U.S.S.G. § 2K2.1(c)(1), "Cross Reference," mandated application of U.S.S.G. § 2A2.1(a)(1) in cases where a firearm had been used in commission of assault with intent to commit murder. The PSR stated that the more specific provision applied, "as the criminal conduct involved deliberate and premeditated criminal conduct during the commission of the shooting on August 5, 2003." J.A. Vol II, 7. The resulting base offense level was twenty-eight (28). The PSR then recommended an additional four (4) levels be added, as the victim sustained life-threatening injuries, *see* U.S.S.G. § 2A2.1(b)(1)(A). The resulting total offense level was thirty-two (32). As this computation resulted in a higher offense level, the PSR recommended thirty-two (32) as the appropriate adjusted level.

Finally, the PSR recommended a three-level reduction for acceptance of responsibility, subject to the Government's motion at the time of sentencing for a one-level decrease for "super acceptance" under U.S.S.G. § 3E1.1(b). Including the three-level downward adjustment for acceptance of responsibility, the resulting offense level was twenty-nine (29), which, combined with the Defendant's criminal history category of IV, yielded a guideline range of 121-151 months. Neither party filed objections to the PSR.

The district court sentenced Smith on May 18, 2004. Notwithstanding the PSR, the United States made no motion for a one-level downward adjustment for acceptance of responsibility. At the sentencing hearing, the United States advised Defendant Smith that it did not believe an extra reduction in the offense level calculation was warranted. The Government stated that by the time Smith had decided to plead guilty, the United States had already taken extensive steps to prepare for trial, including contacting and preparing witnesses.

Arguing that he should receive the extra reduction, Defendant Smith requested a continuation of the sentencing hearing, which was then reset for May 24, 2003. Prior to the rescheduled hearing, the probation officer revised the PSR to reflect that the United States would not be moving for a three-point reduction. It recommended a two-level decrease for acceptance of responsibility rather than the 3-level reduction. Defendant's total offense level was determined to be a level thirty (30), resulting in a guideline range of 135-168 months.

On the date of sentencing, May 24, 2004, the Defendant filed a motion to reduce the sentence, claiming that the United States had broken its promise, allegedly made during plea negotiations, that it would move for reduction of an additional level for acceptance of responsibility.

The United States denied that it had made any promises to the Defendant; it further stated that the Government had expended significant time and resources meeting with groups of witnesses – a different set for each of the four separate incidents – and in trial preparation.

The district court denied Defendant's motion.  Finding the appropriate offense level to be thirty (30), and finding a criminal history category of IV, the court determined that the appropriate guideline range was 135 to 168 months.  The court sentenced Defendant to 151 months, stating:

> His term reflects the middle of the guideline range of 135 to 168 months.  It is felt that the sentence will afford adequate deterrence and will provide just punishment.

Sentencing Tr. at 18, J.A. 57.  Defendant Smith timely appealed.

## II. Analysis

### A. *Booker* Analysis

Smith asserts, for the first time on direct appeal, that his sentence should be vacated and the case remanded pursuant to the Supreme Court's decision in *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005).  We may review Smith's Sixth Amendment claim despite the fact that the Supreme Court did not issue its decision until after the district court had already determined Smith's sentence.  *United States v. Oliver*, 397 F.3d 369, 377 (6th Cir. 2005) (citing *Booker,* 125 S. Ct. at 769 (noting that the case's holdings apply to all cases pending on direct review)).[1]  Because Smith failed to raise a *Booker* challenge to his sentence in district court,[2] however, we can reverse only on a showing of "plain error" by the district court.  *Oliver*, 397 F.3d at 375 (6th Cir. 2005).  Under the plain error test, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.'  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 466-47 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

In *Booker*, the Supreme Court made clear that a Sixth Amendment violation occurs when a district court has issued a "sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict," based upon any fact (other than a prior conviction) not "admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756.  In *Oliver*, we held that sentences imposed on the basis of unconstitutional judicial fact-finding satisfy the plain-error test.  *See generally United States v. Oliver*, 397 F.3d 369, 380-81 (6th Cir. 2005).

Here, the district court enhanced Smith's sentence based on the following judge-found facts: (a) Smith used the firearm in the course of committing an assault "with intent to commit murder," *see* U.S.S.G. § 2A2.1(a)(1), and "the criminal conduct involved deliberate and premeditated criminal conduct during the commission of the shooting," *see* J.A. 72, and (b) the victim of the assault

---

[1] Smith's appellate brief did not initially raise the claim that his sentence violated the Sixth Amendment, as the brief was submitted prior to the Supreme Court's rulings in both *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).  After *Blakely*, the Defendant filed a pro se supplemental letter brief, raising a Sixth Amendment claim under *Blakely* and *Apprendi*.  Both parties have also submitted supplemental briefs on the application of *Booker* to the instant case.

[2] Although Smith objected forcefully to the denial of an additional one-level reduction for acceptance of responsibility, he never objected to the fact-based enhancements he now raises as the basis for his *Booker* claim.

sustained life-threatening injuries.[3]  While Smith arguably may have admitted the fact of life-threatening injury,[4] he did not admit -- either in the plea agreement or at his plea colloquy -- that he had acted "with intent to commit murder," or that his conduct was "deliberate and premeditated." With these enhancements, Smith's offense level was set at thirty-two (32), which yielded a sentencing range of 168-210 months (135-168 months with a 2-level reduction for acceptance of responsibility).  Absent the judicial findings, Smith's offense level would have been twenty-four (24), resulting in a sentencing range of 77-96 months (62-78 months with a 2-level reduction for acceptance of responsibility).  By imposing a sentence of 151 months, the district court sentenced Smith to an additional 55 months of imprisonment beyond the 96 months authorized by the plea agreement alone.  Given that Smith's sentence exceeds the range authorized by his plea agreement and the facts admitted during his plea colloquy, we conclude that his sentence constitutes plain error. *See Oliver*, 397 F.3d at 380-81; *accord United States v. Davidson*, 2005 Fed App. 0224P (6th Cir. May 18, 2005).

In its supplemental letter brief addressing the application of *Booker* to the instant case, the Government argues that our recent decision in *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005), bars Smith's *Booker* claim.  *Bradley,* having found no Sixth Amendment violation, declined to vacate and remand the defendant's sentence despite *Booker*'s rejection of mandatory guidelines. *Bradley* reasoned that the defendant could not challenge his sentence, because he had entered into a plea agreement that, first, waived his appeal, and, second, included an agreement that vaguely said the obvious: that the sentencing guidelines applied to Bradley's case.[5]

Contrary to the Government's argument, *Bradley* is distinguishable from the instant case on several grounds.  First, here, unlike in *Bradley*, Defendant Smith has not waived his right to appeal. In *United States v. Amiker*, 414 F.3d 606 (6th Cir.2005), however, we distinguished *Bradley* and found that a defendant who had agreed, in his plea, to be sentenced under the Guidelines, did not give up his right to a *Booker* re-sentencing where the defendant did not also give up his right to appeal his sentence in the plea agreement. *Id*. at 607.  To similar effect, in *United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005), we found that where a defendant did not expressly waive his right to appeal in the plea agreement, *Bradley* would not stop an alleged Booker error regarding his sentence.  Because Defendant Smith did not waive his right to appeal, we find *Amiker* and *Puckett* control, not *Bradley.*

In addition and unlike *Bradley*, Smith did not agree in his plea agreement to be sentenced to any particular guideline range.  *Compare Bradley*, 400 F.3d at 461 (noting that defendant acknowledged in his plea agreement that "the guideline range in my case should be from 188 to 235 months").  Most pointedly, here, unlike in *Bradley*, Smith actually suffered a Sixth Amendment violation.  The defendant's only claim in *Bradley* was that his sentence had been enhanced by his career-offender status.  He had, however, stipulated to that status in his plea agreement.  Moreover, under *Booker*, that status need not have been determined by a jury, as it was based on the fact of

---

[3]The PSR also suggested an alternative calculation of the offense level, which it ultimately did not recommend. In that calculation, the sentence would have been enhanced two points based on a finding that the Defendant had possessed three firearms, whereas he only pled to having possessed two.

[4]Smith did agree with the government's summary, recited at the plea colloquy, that "Holloway . . .was struck in the back and was rushed to the hospital for medical treatment."  J.A. 37.

[5]Although we decide that *Bradley* does not control our decision in light of our later holdings in *United States v. Amiker*, 414 F.3d 606 (6th Cir. 2005) and *United States v. Puckett*, 422 F.3d 340 (6th Cir. 2005), we note our misgivings regarding any suggestion that, in a pre-Booker plea, a non-specific acknowledgment that the guidelines apply is sufficient to waive *Booker* challenges.

prior convictions.  *See id.* at 462-63 (citing *Booker*, 125 S. Ct. at 756, and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

We thus find that *Bradley* is distinguishable from the instant case.  Pursuant to *Oliver*, we are required to vacate Smith's sentence and remand the case to the District Court.

### B. Remedy

Because the District Court will need to consider the Guidelines-recommended sentences on remand, we provide some guidance as to the proper interpretation of the Guidelines provision whose application was challenged on appeal.  *See, e.g., United States v. McDaniel*,  398 F.3d 540, 551 (6th Cir. 2005).

Defendant Smith has challenged his sentence on the ground that he was unjustly denied a three-level reduction in offense level based on acceptance of responsibility, under § 3E1.1(b). He argues (1) that the court should have granted him the extra point because he had timely pled; (2) that the United States waived its ability not to move for reduction because it did not object to the Presentence Report, which had indicated that Smith would receive the extra point; (3) that the United States improperly breached an oral agreement during plea negotiations that it would move for the extra reduction.

Given the record before us, we conclude that it would not be improper for the district court to deny the Defendant's motion and grant only a two-level reduction rather than a three-level reduction under § 3E1.1(b).

### 1. Government's Discretion

We start with the discretion afforded the Government under § 3E1.1(b).  Pursuant to a change effected by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act, effective April 30, 2003, a defendant may only receive an extra one-level reduction for acceptance of responsibility (in addition to the 2-level decrease awarded by course) at the motion of the Government.  *See* Pub. Law 108-21, section 401(g)(2)(B).  Subsection (b) of the relevant guideline provision provides:

> Upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b) (2003).  The application note for this provision states:

> Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.

U.S.S.G. § 3E1.1(b)(2003), cmt. n.6.

Before *Booker*, in circumstances where the executive branch was allocated such authority in the sentencing phase, the district court had no authority to reduce the defendant's sentence absent a motion by the United States.  *See, e.g., United States v. Rashid*, 274 F.3d 407, 418 (6th Cir. 2001) (in context of § 5K1.1 motion); *United States v. Calloway,* Nos. 03-4900, 03-4906, 108 Fed. Appx. 810, 2004 U.S. App. LEXIS 20807 (4th Cir. Sept. 22, 2004) (unpublished opinion) (in context of

§ 3E1.1(b)); *United States v. Summers*, No. 04-10121, 108 Fed. Appx. 192, 2004 U.S. App. LEXIS 18504 (5th Cir. Sept. 1, 2004) (unpublished opinion) (in context of § 3E1.1(b)). The defendant was not entitled to a remedy unless the claim alleged that the prosecutor's decision not to bring a motion was based on a constitutionally impermissible motive such as race or religion. *See Wade v. United States*, 504 U.S. 181 (1992); *United States v. Hawkins*, 274 F.3d 420, 427 (6th Cir. 2001) (reviewing for unconstitutional motives the government's decision not to move for downward departure).

While *Booker* may relax the bar on a district court's discretion under the guidelines, the district court must still consult with the guidelines when imposing a sentence. And Congress made clear its purpose in amending § 3E1.1(b) to require a government motion: The government is in the best position to know whether it has conserved resources. Thus, even after *Booker*, a district court consulting the guidelines remains constrained in awarding a § 3E1.1(b) reduction absent a motion by the government. *See, e.g., United States v. Clyburn*, No. 1:04-cr-00050, 2005 U.S. Dist. LEXIS 8879, at *5 (W.D. Va. May 13, 2005) (unpublished decision) (in post-*Booker* sentencing, noting that § 3E1.1(b) reduction was unavailable where government did not move for reduction); *cf. United States v. Ziesman*, No. 04-2042, 2005 U.S. App. LEXIS 10144, at *33-*34 (8th Cir. June 3, 2005) (unpublished decision) (in post-*Booker* case, finding defendant had not met burden of showing improper motive where government had not made § 5K1.1 motion); *United States v. Daniel*, No. 04-13493, 2005 U.S. App. LEXIS 9549, at *6-*8 (11th Cir. May 24, 2005) (unpublished decision) (in post-*Booker* case, finding no error in district court's refusal to compel government to file a § 5K1.1 motion, where defendant had not alleged unconstitutional motive); *United States v. Valentin*, No. 03-4358, 2005 U.S. App. LEXIS 9674, at *10 (3d Cir. May 25, 2005) (unpublished decision) (denying defendant relief where government refused to file § 3553(e) motion to reduce sentence below statutory minimum, because defendant did not allege constitutionally impermissible reason).

Further, even under the pre-amendment version of § 3E1.1(b), in which the district court need not have waited first for a motion by the Government, Defendant Smith would not have met his burden of proving that a reduction was appropriate. He has not argued that he gave notice of his intention to plead early enough in the process for the government to avoid preparing for trial. Timeliness is measured, not from the Defendant's perspective, but "by whether the notice was given in time for the government to avoid preparing for trial and for the court to efficiently allocate its resources." *United States v. Gulley*, No. 01-1773, 60 Fed. Appx. 538, 2003 U.S. App. LEXIS 3819, at **19 (6th Cir. Feb. 27, 2003) (unpublished decision). Here, the Government showed that it had called in several witnesses and prepared them for trial, before Defendant pled.

Smith suggests that he had given "every indication of pleading guilty on the original indictment, but changed his plea of guilty due to the fact that the government filed a second superceding indictment." Appellant's Br. at 14. To be sure, a superceding indictment charging counts related to four separate incidents may have required time to investigate, but even so, the Defendant has not produced evidence to suggest that a tight trial schedule prevented him from assessing the Government's case or his own defense. Indeed, Defendant was granted a continuance of six weeks, rescheduling the jury trial from January 8, 2004, to February 23, 2004.

Defendant also argues that he should not be faulted for any delay in communicating an intention to plead, because he went straight to the Government after he was able to determine whether or not he would qualify as an armed career criminal. Again, however, the relevant inquiry is not whether the Defendant had reason for the delay, but whether the Government was saved preparation effort.

Given that the Government has broad discretion in determining whether the criteria have been met before it moves for an adjustment, and given that Defendant has hardly proved that he would have been entitled to the adjustment even in the absence of such discretion, it would not be improper for the district court to deny Defendant's motion.

## 2. Government's Failure to Object

For similar reasons as those mentioned above, the district court could properly dismiss Defendant Smith's argument that the United States failed to object to the initial Presentence Report. The PSR provision upon which the Defendant relies states:

> The defendant voluntarily entered a plea of guilty and admitted to the conduct. Therefore, a two level decrease for acceptance of responsibility appears to be appropriate. The defendant pled in a timely manner and the United States may move at the time of sentencing for the additional one-level decrease. Therefore, a three-level reduction will be applied at this time.

PSR at 6, J.A. 63.

Whether or not the better practice would have been for the Government to notify the Defendant that, in fact, it would not move for the 3-level reduction, the Government may not now be penalized for failing to do so. The PSR, after all, had no authority to confer a right that was then allegedly taken away. Rather, as mentioned, the decision whether to move for the adjustment rested with the Government, based on its estimation of the time saved in trial preparation. Nor does the PSR purport to definitively give the Defendant a reduction: Read as a whole, the PSR paragraph dealing with the issue only provisionally applies the three-level reduction, subject to the motion of the United States at sentencing: "[T]he United States *may* move *at the time of sentencing* for the additional one-level decrease. *Therefore*, a three-level reduction will be applied *at this time*." (Emphasis added). The United States was not required to object to such a provision. Further, Defendant received the appropriate remedy for any shortcoming on the part of the Government here: The sentencing was continued and the Defendant had extra time to prepare for the hearing.

## 3. Government's Alleged Oral Promise

Finally, Defendant argues that, in exchange for his guilty plea, the United States promised him it would move for a reduction under § 3E1.1(b). The United States flatly denied that it made any such promise. The party asserting the breach – here, the Defendant – has the burden of establishing a breach. *See, e.g., United States v. Rooney*, No. 03-6033, 108 Fed. Appx. 322, 324, 2004 U.S. App. LEXIS 18088, at **5 (6th Cir. Aug. 19, 2004) (unpublished opinion); *United States v. Connor*, 930 F.2d 1073, 1076 (4th Cir. 1991). A plea agreement's integration clause will "ordinarily prevent any assertion that there were side deals or promises." *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

Here, the Defendant submitted no affidavit, nor requested an evidentiary hearing, to establish that there had been an understanding between the parties outside the four corners of the plea agreement. Further weighing against the Defendant is the plea agreement's integration clause, which states:

> The parties further agree that this plea agreement constitutes the full and complete agreement and understanding between the parties concerning the Defendant's guilty plea to the above referenced charge, and that there are no other agreements, promises, undertakings, or understandings between the Defendant and the United States.

Plea Agreement at 6, J.A. 18.

The existence of an integration clause will not always preclude consideration of oral promises. In *Peavy*, for instance, a hearing was warranted to determine the terms of an oral promise, even where there was an integration clause, because the government in that case conceded that there

had been an oral promise that had been omitted from the written agreement. 31 F.3d at 1345. Where, however, the Defendant has failed to file an affidavit, and the Government denies that it made any promise with regard to the motion, the integration clause must be accorded more weight. *See, e.g., United States v. Hunt*, 205 F.3d 931, 936 (6th Cir. 2000) ("Given [the Government's] denial, the integration clause, and defendant's failure to file an affidavit, the district court was correct in finding that no hearing was necessary.") As in *Hunt*, so here: The Defendant failed to produce sufficient evidence that the Government made a promise that both parties agreed should be part of the plea agreement.[6] Indeed, Defendant's counsel all but conceded that there had been no such promise. At the sentencing hearing, he stated:

> [I]t is a situation where I believe both sides, both the Defendant and Government, do have different opinions on what was said and what was – I wouldn't say as much promise, but what the understanding was when he entered his plea of guilty.

Sentencing Tr. at 5, J.A. 44.

Defendant alleges that the Government decided not to move for the reduction only when it discovered, contrary to its initial expectation, that the defendant would not qualify as an armed career criminal pursuant to 18 U.S.C. § 923(e). Appellant's Br. at 11-12. Even if this motivation could support a claim that the Government reneged on a purported deal with the Defendant, it is pure speculation on the part of the Defendant. Defendant has produced no proof that the United States in fact went through such a thought process. Indeed, the facts are inconsistent with Defendant's theory: If, as Defendant contends, the Government only realized Defendant would not qualify after it reviewed the PSR, surely it would have indicated some sort of objection to the report. This it did not do.

The Defendant has produced insufficient evidence to base its claim of a breach of the plea agreement.

For the reasons stated above, it would not be improper for the district court to award a two-level decrease rather than a three-level decrease under § 3E1.1(b).

### III. Conclusion

For the reasons set forth above, we **VACATE** Smith's sentence and **REMAND** Smith's case to the district court for resentencing consistent with *Booker* and this opinion.

---

[6] Defendant argues that an evidentiary hearing would have put him in an awkward position, "possibly [bringing] great detriment to his case," because the two parties to testify would have been counsel for the defendant and counsel for the government, who might have then chosen to withdraw from the matter. *See* App. Br. at 12-13. It appears, then, that the Defendant made a tactical choice not to ask for a hearing. Having declined to request sworn testimony, the Defendant could not then ask the judge to make a determination on the strength of Defendant's oral argument alone.

---

## CONCURRENCE

---

COOK, Circuit Judge, concurring.  I join the majority opinion other than its footnote #5.